IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL 99 PENSION FUND, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | NO. |
| SPAID MECHANICAL, INC., an Illinois corporation, | ) ) ) | JUDGE |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff, PLUMBERS AND PIPEFITTERS LOCAL 99 PENSION FUND, by and through its attorney, complains against Defendant, SPAID MECHANICAL, INC., an Illinois corporation, and allege as follows:

1.     This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§§1132, 1145, 1451 (hereinafter referred to as "ERISA").  Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2.     The Plaintiff is a "pension plan" within the meaning of ERISA, 29 U.S.C. § 1002(2).

3.     The Pension Fund is administered within this District and Division, at 4600 - 46th Avenue, Rock Island, Illinois, making venue appropriate in this Court under ERISA, 29 U.S.C. §§ 1132(e), 1451(d).

4. Defendant, Spaid Mechanical, Inc. ("Spaid"), is a corporation organized under the laws of Illinois, with its principal office located at 2243 Springfield Road, Bloomington, Illinois 61704.

5. At all relevant times until approximately April 30, 2016, Spaid was bound to a collective bargaining agreement with Local 99 of the United Association of Plumbers and Pipefitters ("Local 99"), which obligated it to report and pay contributions to the Pension Fund on behalf of employees performing work covered by the collective bargaining agreement.

6. On or about April 30, 2016, Spaid ceased all operations covered by the collective bargaining agreement with Local 99, and/or ceased to have an obligation to report and pay contributions to the Pension Fund.

7. The cessation of Spaid's covered operations and/or obligation to report and pay contributions to the Pension Fund resulted in a "complete withdrawal," as defined in ERISA, 29 U.S.C. § 1383(a).

8. As a result of this complete withdrawal, Spaid, and any businesses under common control, as defined in 29 U.S.C. § 1301(b)(1); 29 CFR 4001.3; 26 CFR 1.414(c)-1, *et seq.*, incurred withdrawal liability to the Pension Fund.

9. The Pension Fund determined that Spaid's withdrawal liability totals $366,443.00, consistent with the requirements of 29 U.S.C. § 1381(b).

10. By letter dated April 20, 2017, the Pension Fund sent a notice and demand for payment of the assessed withdrawal liability to Spaid, via certified mail, consistent with ERISA, 29 U.S.C. §§ 1382, 1399(b)(1). The notice gave Spaid the option to pay the withdrawal liability in a lump sum, or to pay the withdrawal liability in 28 quarterly installments of $16,636.26 each, with a final payment of $12,739.02, with the first payment due on or before June 1, 2017, and subsequent

quarterly payments due by the 1st day of each quarter thereafter. The notice further advised Spaid that it could request review of the assessed withdrawal liability, in writing, within 90 days of the notice. A true and correct copy of the notice and demand is attached hereto as Exhibit 1.

11. Spaid did not request review of the assessed withdrawal liability, as provided under 29 U.S.C. §1399(b)(2).

12. Spaid did not pursue arbitration proceedings disputing the assessed withdrawal liability, as provided under 29 U.S.C. § 1401(a)(1).

13. Spaid did not submit the required first quarterly payment to the Pension Fund due on June 1, 2017. The Pension Fund sent a letter to Spaid, dated August 8, 2017, via certified mail, notifying Spaid that it was delinquent in payment of the withdrawal liability, and advising of the consequences of not curing the delinquency within 60 days. A true and correct copy of the 60-day cure notice is attached hereto as Exhibit 2.

14. Spaid did not cure its default within the 60-day cure period.

15. Spaid has not made any payments due to the Pension Fund towards the assessed withdrawal liability, thus making it in default under 29 U.S.C. § 1399(c)(5).

16. ERISA provides that in the event of a default in the payment of withdrawal liability, the plan can demand immediate payment of the balance of the assessed withdrawal liability, and is further entitled to recover interest from the due date of the first untimely payment, liquidated damages, court costs and attorneys' fees. 29 U.S.C. § 1399(c)(5); 1451(b); 1145; 1132(g)(2).

WHEREFORE, Plaintiffs Pray:

A. That judgment be entered against Defendant, awarding Plaintiffs:

1. The balance due on the assessed withdrawal liability of $366,443.00;

2. Interest on the assessed withdrawal liability, calculated at 7.5% per year from June 1, 2017 forward ($75.30 per day);

3. Liquidated damages calculated at 20% of the balance due on the assessed withdrawal liability of $73,288.60; and

4. Plaintiff's reasonable court costs and attorneys' fees incurred in their efforts to collect the withdrawal liability.

B. That Plaintiff has such further relief as may be deemed just and equitable by the Court, all at Defendant's cost.

/s/   Patrick N. Ryan

Patrick N. Ryan - Lead Counsel
Attorney for Plaintiff
BAUM SIGMAN AUERBACH & NEUMAN, LTD.
200 West Adams Street, Suite 2200
Chicago, IL  60606-5231
Bar No.: 6278364
Telephone: 312/216-2573
Telefax: 312/236-0241
E-Mail: pryan@baumsigman.com

I:\99P\Spaid Mechanical\complaint.pnr.df.wpd